Concurring Opinion.
DeBlanc, J.
Eor upwards of twenty-five years, the validity of the bonds held by relator have been — again and again — acknowledged by the Legislature and the Courts of this State, by the authorities of the City of New Orleans, and by those who — until 1874 — have been taxed to redeem those undisputed and indisputable obligations.
Those bonds evidence — not the separate debt of a limited class, not *23 a debt contracted by or in the exclusive interest of the owners of real estate, but the debt of the city, one which can be enforced— proportionally — against all of those for or by whom it was contracted, on the whole of their property, and assuredly not — as unjustly commanded by the 37th section of the act of 1852 — against an arbitrarily selected fraction of the debtors, not on an arbitrarily designated species of property, not according to an assessment made since more than a quarter of a century, whieh no longer represents the value of even the property on which that unequal and iniquitous tax was imposed, but by the levy of a proportional tax on both the real and personal property of those who — collectively and not otherwise — are liable for that common debt, the primodial and subsisting validity of which is not and could not be successfully assailed.
With or without any constitutional enactment, as well before as since the adoption of the constitution of 1845, 1852 and 1868, a tax which — -legitimately—can never be but a general and proportionate contribution, levied to carry out a public enterprise, to satisfy a public liability, neither can nor could be considered as equal and binding, unless imposed — according to circumstances — throughout the State, or throughout any of its subdivisions — on every species of property, except such as in every civilized State — is tacitly or expressly — exempted from taxation by common consent or constitutional restrictions.
The act of 1852 imparted to the consolidated bonds a validity which no subsequent legislation could or can impart; but that act did not so far suspend and paralyze the Sovereignty of the State, that — after its promulgation — the State was powerless to correct a manifest error, to discontinue an indefensible injustice, to enlarge — within its own limits or the limits of any of its subdivisions — the category of the taxable property, and to more effectually secure — by the creation of an additional quantity — the ultimate satisfaction of the acknowledged obligations of those subdivisions, the rights of their acknowledged creditors. This it did in 1856, in obedience to the mandate of its constitution, in accordance with the dictates of reason and justice.
In so doing, the State neither impaired, nor intended to impair the obligation of the city’s contract, but merely exercised the undoubted privilege which it had and which its Legislature could not surrender, to obliterate from,the statute book the partial enactment which — until then — had authorized the levy of a discriminating, unequal and unlawful tax. That was right; but it is evident — the city’s liability existed before, did not arise from and has survived the repealed enactment.
A constitutional law, or any constitutional section of a law forms an inseparable part of a contract entered into during its existence; but, if -any legislative act, or any section of an act which violates the Consti *24 tution of a State, can be considered as part of a contract, it drags into-it a lifeless form, an absolute nullity, which may and should be disregarded, which no court could justly enforce.
The power to enter into a contract and the exercise of that power, being inseparable from the corresponding duty and obligation to voluntarily execute it or suffer its legal enforcement, it is incontestable that under either a special statute, the general law, an express stipulation or an irresistible implication — an adequate remedy, inseparable from a conceded and acquired right, is — as the right itself — vested in the creditor, to require and compel a compliance with the contract.
I concur in the opinion and decree read by Mr. Justice Marr.